1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        CENTRAL DISTRICT OF CALIFORNIA

10
11   ROTANYA K. HESTER,              )   Case No. ED CV 14-852-SP
                                     )
12              Plaintiff,           )
                                     )
13         v.                        )   MEMORANDUM OPINION AND
                                     )   ORDER
14   CAROLYN W. COLVIN, Acting       )
     Commissioner of Social Security )
15   Administration,                 )
                                     )
16              Defendant.           )
                                     )
17   _____)

18
19                              **I.**
20                        **INTRODUCTION**
21         On May 2, 2014, plaintiff Rotanya K. Hester filed a complaint against
22   defendant, the Commissioner of the Social Security Administration
23   ("Commissioner"), seeking a review of a denial of supplemental suecuirty income
24   ("SSI").  Both plaintiff and defendant have consented to proceed for all purposes
25   before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court
26   deems the matter suitable for adjudication without oral argument.
27         Although plaintiff characterizes her claims as one issue, she actually
28

                                     1

presents two disputed issues for decision:  (1) whether the Administrative Law Judge ("ALJ") properly rejected the opinion of her treating physician; and (2) whether the ALJ failed to fully develop the record.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-9.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly rejected the physician's opinion but failed to adequately develop the record.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-three years old on November 1, 2000, her alleged disability onset date, completed school through the eleventh grade.  AR at 60, 238. She has no past relevant work.  *Id.* at 56.

On July 27, 2011, plaintiff filed an application for SSI due to rheumatoid arthritis, depression, bipolar disease, hypertension, and asthma.  *Id.* at 60-61, 234. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing.  *Id.* at 81-83, 94-99.

On December 19, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  *Id.* at 30-59.  The ALJ also heard testimony from Ashley Hester, plaintiff's wife, and David Rinehart, a vocational expert.  *Id.* at 48-58.  On January 7, 2013, the ALJ denied plaintiff's claim for benefits.  *Id.* at 12-25.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

1    since July 27, 2011, the application date.  *Id.* at 14.

2          At step two, the ALJ found that plaintiff suffered from the following severe

3    impairments:  arthritis; degeneration of the back; and affective disorder.  *Id.*

4          At step three, the ALJ found that plaintiff's impairments, whether

5    individually or in combination, did not meet or medically equal one of the listed

6    impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

7    "Listings").  *Id.* at 15.

8          The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

9    determined that plaintiff had the RFC to perform medium work except that she

10   was limited to non-public, simple, routine tasks with occasional contact with co-

11   workers and supervisors.  *Id.* at 16.

12         The ALJ found, at step four, that plaintiff had no past relevant work.  *Id.* at

13   24.

14         At step five, the ALJ found that there were jobs that existed in significant

15   numbers in the national economy that plaintiff could perform, including hand

16   packager, floor waxer, and hospital cleaner.  *Id.* at 24-25.   Consequently, the ALJ

17   concluded that plaintiff did not suffer from a disability as defined by the Social

18   Security Act.  *Id.* at 25

19         Plaintiff filed a timely request for review of the ALJ's decision, which was

20   denied by the Appeals Council.  *Id.* at 1-3.  The ALJ's decision stands as the final

21   decision of the Commissioner.

22

23

24

25   [1]    Residual functional capacity is what a claimant can do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
26   1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
     evaluation, the ALJ must proceed to an intermediate step in which the ALJ
27   assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
     F.3d 1149, 1151 n.2 (9th Cir. 2007).
28

1
2

### III.

### STANDARD OF REVIEW

3         This court is empowered to review decisions by the Commissioner to deny
4   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
5   Administration must be upheld if they are free of legal error and supported by
6   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
7   (as amended).  But if the court determines that the ALJ's findings are based on
8   legal error or are not supported by substantial evidence in the record, the court
9   may reject the findings and set aside the decision to deny benefits.  *Aukland v.*
10  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
11  1144, 1147 (9th Cir. 2001).

12        "Substantial evidence is more than a mere scintilla, but less than a
13  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
14  "relevant evidence which a reasonable person might accept as adequate to support
15  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
16  F.3d at 459.  To determine whether substantial evidence supports the ALJ's
17  finding, the reviewing court must review the administrative record as a whole,
18  "weighing both the evidence that supports and the evidence that detracts from the
19  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
20  affirmed simply by isolating a specific quantum of supporting evidence.'"
21  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
22  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing
23  the ALJ's decision, the reviewing court "'may not substitute its judgment for that
24  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
25  1992)).

26
27
28

IV.

DISCUSSION

A.    The ALJ Provided Specific and Legitimate Reasons for Rejecting the Medical Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician at Upland Community Counseling.  P. Mem. at 2-8.  Specifically, plaintiff contends that the ALJ's reasons for rejecting the opinion were not specific and legitimate and supported by substantial evidence.  *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. § 416.927(b).  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by

substantial evidence for rejecting it. *Id.* at 830.  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1.   California Department of Corrections and Rehabilitation

Plaintiff was in prison from 2000 through November 2011.  *See* AR at 36, 457.  Plaintiff sought medical help for her mental impairments from prison medical staff from approximately June 2010 through November 2011.  *See, e.g., id*. at 437, 457.  Prison psychiatrists and licensed clinical social workers ("LCSW") diagnosed plaintiff with mood disorder, not otherwise specified, and treated her with medication and individual and group counseling.  *See, e.g., id*. at 417, 422, 427, 437.  The majority of the results from plaintiff's mental status examinations were within normal limits.  *See, e.g., id*. at 415, 427, 465.  Plaintiff was frequently non-compliant with her medication and eventually opted to discontinue her medications.  *See, e.g., id*. at 421, 423, 427, 466.

After discontinuing her medications, plaintiff reported experiencing mood swings, as well as off and on auditory hallucinations.  *See, e.g., id.* at 458, 466.  Nevertheless, plaintiff reported that she could manage the symptoms and plaintiff's mental status examinations generally remained within normal levels, including having the ability to communicate effectively and appropriately.  *See, e.g., id*. at 458, 46-66.  Plaintiff reported that after her parole, she would obtain medications if necessary.  *Id.* at 458.

1

## 2. **Upland Community Counseling**

2    After plaintiff's parole, plaintiff sought periodic medical treatment at

3    Upland Community Counseling through at least August 2012. *See id.* at 629, 643.

4    At the initial screening appointment in December 2011, plaintiff reported

5    depression, mood swings, racing thoughts, and auditory hallucinations. *Id*. at 643.

6    Plaintiff also reported that she was out of medications and had stopped taking

7    them seven to eight months ago. *Id.* At her subsequent intake meeting, plaintiff

8    presented as oriented, anxious, and paranoid. *Id.* at 641. Plaintiff again reported

9    that she ran out of medication eight months prior. *Id*. at 639. Plaintiff was

10    diagnosed with major depressive disorder and was treated on several other

11    occasions. *Id.* at 629-31.

12    On June 13, 2012, someone from Upland Community Counseling

13    completed a documented entitled Medical Opinion Re: Ability to Do Work-

14    Related Activities (Mental). *Id.* at 494-95. That person opined that plaintiff was

15    seriously limited in her ability to remember work-like procedures, understand and

16    remember very short and simple instructions, maintain attention for a two-hour

17    segment, and adhere to basic standards of neatness and cleanliness, and was

18    otherwise unable to meet competitive standards in all other areas. *Id.* In support

19    of this opinion, the person cited plaintiff's visual and audio hallucinations,

20    anxious behavior, disheveled appearance, intrusive thought, pacing, slow speech,

21    angry mood, and paranoia. *Id.* at 495.

22

## 3. **Arrowhead Regional Medical Center**

23    On April 13, 2012, plaintiff was placed on a 5150 hold after admitting to

24    suicidal ideation. *See id.* at 559; Cal. Welfare & Inst. Code § 5150. Plaintiff

25    complained of anxiety, paranoia, and audio hallucinations telling her that she was

26    bad and to kill herself. *See* AR at 559, 568. Plaintiff had been experiencing

27    difficulties with her mother and daughter. *See id.* at 559. Plaintiff admitted that

28

1   she had not been taking her medications for at least a week. *Id*. Dr. Lindy Lay

2   diagnosed plaintiff with major depressive disorder and prescribed medications. *Id.*

3   at 560.

4        **4.**    **The ALJ's Findings**

5        The ALJ concluded that plaintiff had the severe impairments of arthritis,

6   degeneration of the back, and affective disorder, and had the RFC to perform

7   medium work but limited to non-public, simple, routine tasks with occasional

8   contact with co-workers and supervisors. *Id*. at 14, 16. In reaching that

9   determination, the ALJ reviewed the medical evidence and gave little weight to

10  the June 13, 2012 opinion fro Upland Community Counseling at issue. The ALJ

11  gave the opinion little weight because the opinion was a checklist form and the

12  person providing the opinion failed to provide the underlying reasons behind the

13  conclusions, the opinion was not supported by objective evidence, and the opinion

14  was inconsistent with plaintiff's treatment records at the California Department of

15  Corrections and Rehabilitation ("CDCR"). *Id.* at 22.

16       As an initial matter, the author of the opinion and his or her status is

17  uncertain. The opinion is signed by someone from Upland Community

18  Counseling but the signature is illegible, there is no printed name, and there is no

19  title following the signature. *See id.* at 495. During the hearing, plaintiff's

20  counsel stated that the opinion was from a treating physician named Dr. Wiley. *Id.*

21  at 58. A review of the records reflects that there is no Dr. Wiley but there is a Dr.

22  Sushma Sachdev Wali. *See, e.g., id.* at 630-31. Although the signatures are not

23  identical, the resemblance is similar enough for the court to assume that Dr. Wali

24  completed the form opinion. But it is not clear that Dr. Wali was a treating

25  physician at the time he completed the opinion. It appears Dr. Wali only examined

26  plaintiff on one occasion prior to issuing the June 13, 2012 opinion. *See id.* at

27  630-31, 645. Prior to his examination, two colleagues examined plaintiff at an

28

1    initial screening and intake meetings and another colleague treated her twice. *See*

2    *id.* at 634, 637-44. Even taking into account the two appointments with his

3    colleagues, Dr. Wali did not have a longitudinal treating relationship with

4    plaintiff.

5         Nevertheless, the standards for rejecting the opinion of an examining

6    physician and a treating physician are the same, and the ALJ provided sufficient

7    reasons for giving Dr. Wali's opinion less weight. The ALJ's first reasons for not

8    crediting Dr. Wali's opinion were that it was conclusory and unsupported by

9    underlying rationale or evidence.[2] *Id.* at 22. An "ALJ need not accept a treating

10   physician's opinion which is brief and conclusory in form with little in the way

11   of clinical findings to supports its conclusions." *Magallanes*, 891 F.2d at 751

12   (internal quotation marks and citations omitted); *see Crane v. Shalala*, 76 F.3d

13   251, 253 (9th Cir.1996) (evidence of an impairment in the form of "check-off

14   reports" may be rejected for lack of explanation of the bases for their conclusions).

15   Here, Dr. Wali opined severe mental limitations. Other than four areas where

16   plaintiff was purportedly only seriously limited, Dr. Wali opined that plaintiff's

17   mental abilities were unable to meet competitive standards in all other areas. AR

18   at 494-95. But despite his opinion that plaintiff was unable to even satisfactorily

19   ask simple questions or accept instructions, Dr. Wali also opined that plaintiff

20   could manage her own benefits. *Id.*

21        Notwithstanding the contradiction, here, the bases cited by Dr. Wali for the

22   severe limitations are vague. Other than audio hallucinations, for which Dr.

23   Wali's notes contain specific examples, the other reasons – visual hallucinations,

24   anxious, disheveled, intrusive thought, pacing, slow speech, angry mood, and

25

26   _____

27   [2]   The ALJ also stated that Dr. Wali's opinion "appear[ed] to have been
     completed as an accommodation to" plaintiff. AR at 22. There is no evidence that
28   Dr. Wali completed the form opinion "as an accommodation" to plaintiff.

1   paranoid – are insufficient.  These reason, by themselves, are vague and do not

2   explain why plaintiff is so limited mentally.  *See Rollins v. Massanari*, 261 F.3d

3   853, 856 (9th Cir. 2001) (ALJ properly rejected opined limitations that "were so

4   extreme as to be implausible").

5       Dr. Wali's opinion is also not supported by the notes from Upland

6   Community Counseling.  At the screening meeting, the clinician only recorded

7   plaintiff's subjective complaints.  *Id*. at 643.  At the intake meeting, the clinician

8   observed that plaintiff was anxious, slightly fearful, well groomed, and paranoid.

9   *Id*. at 642.   Dr. Than Myint then examined plaintiff and observed that she had a

10  depressed affect.  *Id.* at 637.  On the one occasion Dr. Wali examined plaintiff

11  prior to the opinion, plaintiff reported she had auditory hallucinations in which the

12  devil told her she was not worthy.  *Id.* at 630.  Dr. Wali observed that plaintiff had

13  a disheveled appearance, poor eye contact, intrusive and pacing behavior, slow

14  speech, and anxious and irritable affect, and noted that plaintiff had visual

15  hallucinations.  *Id.* at 631.  Most of the observations were general in nature and the

16  notes did not indicate the symptoms were extreme.  Although Dr. Wali observed

17  symptoms suggesting more limitations than others observed, those symptoms were

18  typically not present during other examinations.  *See, e.g.,* AR at 461-63.

19  Moreover, as the ALJ noted, plaintiff had a history of non-compliance with her

20  medications including in the months prior to her treatment at Upland Community

21  Counseling and just prior to her examination by Dr. Wali.  *See id.* at 22, 464-65.

22  Therefore, the ALJ's finding that the opinion was conclusory and unsupported was

23  a specific and legitimate reason for discounting it.[3]

24      The second reason cited by the ALJ for giving Dr. Wali's opinion less

25  _____

26      [3]   Plaintiff's 5150 hold may support Dr. Wali's opinion, but nothing in either
    his treatment notes or opinion suggests that Dr. Wali was even aware of the 5150
27  hold.  Further, the treatment record indicates that plaintiff was non-compliant prior
28  to the hold.

1    weight is that it was inconsistent with plaintiff's treatment records from CDCR.

2    AR at 22; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (the

3    incongruity between a physician's opinion and treatment records is a specific and

4    legitimate reason for rejected the opinion).  As discussed above, CDCR records

5    consistently reflect mental status examinations within normal limits, even after

6    plaintiff decided to discontinue her medication. *See, e.g.*, AR at 461-63.  As for

7    plaintiff's reported auditory hallucinations, they were not frequent and plaintiff

8    was able to manage those symptoms. *Id.* at 458-59.  Therefore, inconsistency with

9    treatment records is a specific and legitimate reason for discounting Dr. Wali's

10   opinion.

11        Accordingly, the ALJ properly considered Dr. Wali's opinion and provided

12   specific and legitimate reasons supported by substantial evidence for rejecting it.

13   **B.    The ALJ Failed to Fully Develop the Record**

14        Plaintiff further contends that the ALJ did not fully and fairly develop the

15   record.  P. Mem. at 8-10.  Specifically, plaintiff argues that, given the evidence of

16   a severe mental impairment, the ALJ should have either contacted her treating

17   physician or retained a medical expert or psychiatric consultative examiner. *Id.*

18        When the record is ambiguous, the Commissioner has a duty to develop the

19   record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*,

20   276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there

21   is ambiguous evidence or when the record is inadequate to allow for proper

22   evaluation of the evidence"); *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he

23   needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had

24   a duty to conduct an appropriate inquiry, for example, by subpoenaing the

25   physician[ ] or submitting further questions to [him or her].").  This may include

26   retaining a medical expert or ordering a consultative examination.  20 C.F.R.

27   § 416.919a(a).  The Commissioner may order a consultative examination when

28

1   trying to resolve an inconsistency in evidence or when the evidence is insufficient

2   to make a determination.  20 C.F.R. § 416.919a(b).   When there is evidence of a

3   mental impairment, this duty to develop is "heightened."  *Tonapetyan v. Halter*,

4   242 F.3d 1144, 1150 (9th Cir. 2001).

5        Here, the ALJ  had the duty to further develop the record.  In his RFC

6   determination, the ALJ concluded that plaintiff was limited to non-public, simple,

7   routine tasks with occasional contact with co-workers and supervisors.  AR at 16.

8   But the ALJ did not explain how he reached this conclusion.  Other than the

9   limitation to simple, routine tasks, which was supported by treatment notes that the

10  clinician used simple language and spoke slowly in order to achieve effective

11  communication with plaintiff, plaintiff's treatment notes did not discuss specific

12  limitations.  *See id.* at 457.  And although the court found that the ALJ correctly

13  recognized that plaintiff's treatment records at CDCR generally reflected normal

14  mental status examinations, the ALJ properly rejected Dr. Wali's opinion on the

15  basis that it was not supported by the objective medical evidence, and plaintiff's

16  lack of compliance with her treatment plan may be a cause for her symptoms and

17  is reason to discount her credibility, there is evidence to suggest that plaintiff's

18  symptoms may be worsening.  In addition to increasing auditory hallucinations

19  after her release from prison, plaintiff was admitted on a 5150 hold.  Thus, on this

20  record, it is not clear the ALJ's RFC determination was supported by substantial

21  evidence in the record as a whole.  *See Aukland*, 257 F.3d at 1035.  A consultative

22  examination is necessary in order for the ALJ to make an informed determination

23  supported by substantial evidence regarding the severity of plaintiff's limitations.

24                                    **V.**

25                         **REMAND IS APPROPRIATE**

26       The decision whether to remand for further proceedings or reverse and

27  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

28

                                    12

888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to fully develop the record.  On remand, the ALJ shall retain a consultative examiner or medical expert, and either credit his or her opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it.  The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

//

//

//

1

**VI.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered
REVERSING the decision of the Commissioner denying benefits, and
REMANDING the matter to the Commissioner for further administrative action
consistent with this decision.


DATED: July 10, 2015

SHERI PYM
United States Magistrate Judge

14